UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CLASSIC MARITIME, INC., | § | |
| | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | C. A. 1:21-cv-00083-LY |
| | § | |
| XCOAL ENERGY AND RESOURCES LLC D/B/A/ XCOAL ENERGY AND RESOURCES, | § § § | |
| | § | |
|     DEFENDANTS. | § | |

## OPPOSITION TO PLAINTIFF'S APPLICATION FOR ISSUANCE OF A WRIT OF ATTACHMENT

Defendant Xcoal Energy and Resources ("Xcoal") pursuant to its restricted appearance under Admiralty Supplemental Rule E(8) hereby opposes Plaintiff Classic Maritime Inc.'s ("Classic") application for issuance of a writ of attachment in the above case for the following reasons:

Xcoal and Classic are parties to an Americanized Welsh Coal Charter dated 2 December 2019 ("Charter"). The terms and conditions of that Charter specifically provide that freight is not due and owing until the cargo is loaded aboard the vessel:

> Freight payment
> 1. Initial freight payment 95 (ninety five) percent freight is payable on Bill of Lading weight against Owner's invoice 5 (five) working/banking days after loadport agents telegraphically confirm (to Charterers and Owners) that 'clean on board' Bill(s) of lading marked "Freight payable as per Charter Party" have been signed and released to the parties as instructed by Charterers, less address commission and 1.25% brokerage commission to BRS USA.
>
> 2. **Full freight is deemed earned as cargo loaded on board**, discountless whether vessel and/or cargo lost or not lost.
>
>     . . .

> 6. Voyage settlement Balance of freight, plus any undisputed deadfreight and/or demurrage if any, less despatch, if any, is to be settled and paid against Owner's invoice thirty (30) days after completion of discharge provided Charterers are in receipt of all the required documentation for closing of accounts by that time, failing which is to be settled as soon as possible thereafter.

*See* Ex. (1), Clause 30. Thus, despite Classic's assertion that Xcoal breached the charter by failing to supply a number of cargo loads, no freight is earned until the cargo is loaded on board, and payment is not due for the first 95% of freight until clean on board bills of lading have been issued, and payment for the remaining 5% of freight is not due until thirty days after Owner's freight invoice is received following discharge. Consequently, no freight is due and owing under the Charter's payment terms.

Classic relies upon a clause that simply identifies the rate to be paid if cargo is loaded aboard the vessel. *See* Clause 30.A. To the extent that Classic may be entitled to damages, it has the burden of proving the quantum of those damages, and clearly both the contract terms cited above and its duty to mitigate damages below prevents it from quantifying its damages with any degree of certainty.

Secondly, assuming arguendo that Xcoal breached the contract by failing to supply a certain number of cargo loads in 2020, Classic was obligated to mitigate its damages by seeking and obtaining substitute employment for its vessels. Based upon information and belief, Classic did just that by employing its vessels in other trades. Xcoal approached Classic a number of times in 2020 to find substitute voyages for the vessels originally intended to transport its cargo from East Coast USA to Korea. Xcoal asked Classic for time charter equivalent rates to transport its cargo to India. Classic never responded to Xcoal's overture. Moreover, each time Xcoal sought a vessel from Classic to carry its cargo to destinations other than Korea, Classic would not make a vessel available until 30 to 45 days later, which was too late for the intended voyages. Classic's

responses indicate that its vessels were already gainfully employed elsewhere. Xcoal believes that Classic employed its vessels in more lucrative trades, one of which was the iron ore trade to China, whose rates were exceedingly high.

Finally, the Charter includes two force-majeure clauses. One of those clauses provides as follows:

> A. War, whether declared or not, civil war, hostilities, riots, piracy, revolutions, rebellion, acts of sabotage, embargo, blockade, mobilization, acts of any government or governments of any sub-division or agency thereof insurrections, political disturbances, or natural disasters such as violent storms, cyclones, earthquakes, floods, landslides, destruction by lightening, explosions, fires, or destruction of mining machinery and/or any kind of (involved) installations, ice or frost, snow, fog, or bad weather, or boycotts, strikes, lock-outs of any kind, go-slows, occupation of mines and premises, work stoppages whether partial or total of miners or production plant, workmen, lightermen, tugboatmen, or other essentials to the working, carriage, delivery, shipment, discharge or receiving/takeaway of said cargo for which the vessel is stemmed, or acts of Authority whether lawful or unlawful, or **default by Charterer's** Supplier or cargo **Consignee**, or accidents and/or breakdowns at the mines, at or about Supplier/Shippers or Consignees works or berth/anchorage, partial or total stoppage or embargo on the railways, rivers or canals and/or barge lines delivering or receiving or taking away the cargo, or at the (loading/ discharging) port/terminal/dock/berth/ anchorage, or intervention of sanitary, customs, and/or other constituted authorities, **epics, quarantine**, **or any other causes or hindrances beyond the control of the Charterer preventing or delaying** the mining or production, **supplying**, loading or discharging or receiving/takeaway of the **cargo (for which the vessel is stemmed) are excepted**; any time lost at any time by reason of or as a consequence of any or all of the aforementioned causes shall not be computed in the loading or discharging time.
>
> . . .
>
> C. **If because of any event due to Force Majeure under this Charter Party, either party shall be unable to carry out any of its obligation, then the obligation of that party, other than the obligation to pay money, hold harmless, and indemnify, shall be suspended to the extent made necessary by Force Majeure**. The party affected by Force Majeure shall give prompt notice to the other party of the nature and probable duration at the Force Majeure conditions. Notwithstanding the forgoing, Charterer shall not be responsible for demurrage under any circumstances for any period of time during which Owner's performance is suspended because of Owner's claim of Force Majeure. Such Force Majeure to be valid and substantiated.

3

*See* Ex. (1), Clause 50. (Emphasis added). The other force majeure clause is found in Clause 8 which excepts from performance "[t]he Act of God, the Monarch's king's enemies. [sic] Restraints of princes and rulers, and perils of the sea." As a result of the pandemic, Xcoal's traditional contracting party in Korea, POSCO, declined to purchase cargo loads of Xcoal's product in 2020, which prevented Xcoal from supplying the cargo loads envisioned under the arrangement with Classic. The pandemic and its ensuing fallout were beyond the control of Xcoal and prevented Xcoal's performance. Pursuant to Clause 50.C, Xcoal's performance obligations were suspended for the period of Force Majeure, which continues through the present day. POSCO is still not contracting for the purchase of Xcoal's product as it did before the pandemic.

Lastly, pursuant to the Charter, Classic Maritime is required to litigate its dispute with Xcoal in New York arbitration. Because its actual damages are unknown at this point, Classic should be required to prove up its damages in arbitration. Xcoal should not be subjected to an attachment or garnishment of its property based upon highly speculative damages.

For the foregoing reasons, no legitimate basis exists for Classic to obtain a writ of attachment or to garnish monies held in any accounts, and Xcoal strenuously opposes the issuance of any writ of attachment or garnishment. Xcoal respectfully seeks an order denying Plaintiff's application, and for all other and further relief as may be just and proper.

Dated: February 1, 2021

Respectfully submitted,

*/s/ Keith B. Letourneau*
Keith B. Letourneau
State Bar No. 00795893
Fed. I.D. No. 20041
Zachary R. Cain
State Bar No. 24078297
Fed. I.D. No. 1829905
BLANK ROME LLP

717 Texas Avenue, Suite 1400  
Houston, TX 77002  
Ph.: 713-228-6601  
Fax: 713-228-6605  
Email: kletourneau@blankrome.com  
Email: zcain@blankrome.com  
*Counsel for Xcoal Energy and Resources*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of February, 2021, the foregoing was served on all counsel of record in accordance with Rule 5 of the Federal Rules of Civil Procedure, as follows:

Julia M. Hanes  
Holland & Knight LLP  
1100 Louisiana Street, Suite 4300  
Houston, TX 77002  
Julia.Haines@hklaw.com

and

James H. Power  
Holland & Knight LLP  
31 West 52nd Street  
New York, NY 10019  
James.power@hklaw.com

*Counsel for Classic Maritime, Inc.*

*/s/ Keith B. Letourneau*  
Keith B. Letourneau

5