UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Classic Maritime Inc, § | |
| § | |
| Plaintiff, § | |
| § | Case No. 1:21-cv-00083 |
| v. § | |
| § | Admiralty Rule 9(h) |
| XCoal Energy and Resources LLC D/B/A/ § | |
| XCoal Energy and Resources § | |
| § | |
| Defendant. § | |

## SECOND REPLY IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR ISSUANCE OF A WRIT OF MARITIME ATTACHMENT

Plaintiff, Classic Maritime Inc. ("Classic" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, submits this reply in Further Support of Plaintiff's Rule B Application and in response to the second opposition filed by defendants XCoal and Energy and Resources LLC d/b/a XCoal and Energy and Resources ("XCoal" or "Defendants") (Dkt. # 10) (the "Second Opposition").

### Introduction

Classic commenced this action on January 28, 2021 with the filing of its Verified Complaint seeking a Rule B attachment against property of XCoal in the district and stating therein its *prima facie* admiralty claims (Dkt # 1), along with a supporting declaration from James H. Power attesting the XCoal could not be found within the district (Dkt. # 3-1), as well as a supporting memorandum of law demonstrating that all of the requirements for obtaining a Rule B attachment order are met and are present in this case (Dkt. # 3) (Dkt. ## 1, 3, 3-1 collectively, the

"Rule B Application"). Classic submits that its Rule B Application satisfies all of the requirements for obtaining a maritime attachment against XCoal's property in the District.[1]

On February 1, 2021, XCoal filed its Opposition to the Rule B Application presenting arguments only with respect to the merits of Classic's claims, including arguments concerning mitigation of damages. Dkt. # 4 (the "First Opposition"). In the First Opposition, XCoal did not raise any arguments with respect to whether it was "found within the district" for the purpose of Rule B, or any arguments with respect equitable grounds for denying the Rule B Application. Classic filed a reply in further support of its Rule B Application addressing XCoal's arguments on February 8, 2021. Dkt. # 8.

The Court has not yet ruled on Classic's Rule B application, but did not order any further briefing with respect to the application or XCoal's First Opposition. None-the-less, on February 10, 2021, XCoal filed its Second Opposition claiming for the first time, 10 days after its First

---

[1] The requirements for obtaining a Rule B attachment are well stated and undisputed. To obtain a Rule B attachment the Plaintiff must show only that:

1. it has a valid *prima facie* admiralty claim against the defendant;
2. the defendant cannot be found within the district;
3. the defendant's property may be found within the district; and
4. there is no statutory or maritime law bar to the attachment.

*See e.g., Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008). After review of the Plaintiff's complaint and supporting declaration, "if the conditions of this Rul B appear to exist," the court must "enter an order so stating and authorizing process of attachment and garnishment." Fed. R. Civ. P Supp. R. B(1)(b); *see also Heidmar, Inc. v. Anomina Ravennate Di Armanento Sp.A of Revenna*, 132 F.3d 264, 267 (5th Cir. 1998).

Opposition and two weeks after the filing of the Verified Complaint, that it is "found within the district" for the purposes of Rule B. XCoal also argues for the first time in its Second Opposition that this Court should deny the Rule B Application on equitable grounds.[2] Neither of these arguments have any merit.

## Argument

I. **Under The Applicable Test, A Mere Office And One Employee In The District Is Not Sufficient To Be Found Within The District For The Purposes Of Rule B.**

The applicable standard for determining whether a defendant is "found within the district" for the purposes of Rule B is a two-prong test that asks: "[f]irst, can the defendant be found within the district *in terms of jurisdiction*? Second, can the defendant be found within the district for service of process?" *LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. 1981) (emphasis added)(citing *Seawind Compania, S.A. v. Crescent line, Inc.*, 320 F.2d 580 (2d Cir. 1963)). Only if the answer to both questions is affirmative is the defendant considered to be "found within the district." *Id*. XCoal argues, conclusory and without any support or legal argument, that because it maintains an office in the district manned by one employee both prongs of the "found within the district" test are answered in the affirmative. XCoal is wrong. A mere office with one employee alone is not sufficient to establish that XCoal is found within the district "*in terms of jurisdiction*." To the contrary, there is no evidence that XCoal (a Pennsylvania corporation with its principle

---

[2] In support of its Second Opposition, XCoal also presents for a second time its merit based arguments related to mitigation of damages. XCoal does not raise any new issues, arguments, or legal support in its Second Opposition with respect to mitigation of damages. Classic has fully addressed XCoal's mitigation arguments in its First Reply (Dkt. # 8 at 8-9), and will not address those issues again in this Second Reply.

place of business in Pennsylvania) has contacts with Texas that are so "continuous and systematic" as to render it essentially at home in the this forum. In fact, all the evidence suggests that XCoal does not actually do business in the state. Accordingly, XCoal is not "found within the district" for the purposes of Rule B.

The Rule B "found within the district" test is all about determining whether the plaintiff can bring an action against the defendant *in personam* for its claims in the district. That is why the relevant test contemplates both personal jurisdiction and service of process in the district. If the defendant can be sued *in personam* in the district, than it is "found" within the district for the purpose of Rule B. If the defendant cannot be sued *in personam*, than the defendant is not found and if the other requirements of Rule B are met the attachment should issue. *See e.g., Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 ( 5 th Cir 1992) ("Rule B is an adjunct to a claim *in personam*. When the defendant cannot be "found within the district" the plaintiff may "attach the defendant's goods and chattels") *see also U.S. v. Cia. Naviera Continental S.A.*, 178 F. Supp. 561, n.2 (S.D.N.Y. 1959) (noting that in maritime attachment cases, defendants often "argue in reverse of the contention usually made when resisting jurisdiction").

The first prong of the test is all about personal jurisdiction. Specifically, courts applying the test look to whether there is some basis whereby the defendant may be subject to general personal jurisdiction in the state where relevant district sits.[3] For example, in *LaBanca*, the court

---

[3] Specific personal jurisdiction may also answer the first prong of the "found within the district" test in the affirmative. Here, however, there is no dispute that XCoal would not be subject to specific personal jurisdiction in this district for Classic's claims. Classic's claims are in no way related to XCoal's purported San Antonio office, or any activities or contacts with the State of Texas. Rather, XCoal's argument amounts to an argument that it is subject to general jurisdiction in Texas because it maintains one office with one employee in the State.

4

#82078689_v2

determined that the first prong was not at issue in that case because both parties agreed that the defendants' "activity within the district at the time of appellant's injury sufficiently constitutes the "minimum contacts" necessary to provide jurisdiction." 664 F.2d at 67. Similarly, in *Seawind*, the Second Circuit explained that the first prong of the "found within the district" test requires an inquiry into whether a defendant is "*engaged in sufficient activity in the district to subject it to jurisdiction … .*" 320 F.2d at 583. (emphasis added). The *Seawind* Court noted that a defendant could be "found" within the district if its contacts with and activities in the state would qualify as "doing business" under the ordinary personal jurisdiction test. *Id*. (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958) (examining limits of the "minimum contacts" test under *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Accordingly, state law and the controlling principles of the Due Process Clause with respect to general personal jurisdiction are relevant to the Rule B "found within the district" inquiry. *See STX Panocean (UK) v. Glory Wealth Shipping,* 560 F.3d 127, 128 (2d Cir. 2009) (finding that courts must "look to [the relevant state] law to determine whether the Defendants can be found within the [] District").

Under Texas law, *in personam* jurisdiction over a nonresident may be exercised only if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with state and federal due-process guarantees. *Madison Development Group LLC v. Mattress Firm, Inc.*, 608 S.W. 3d 376, 387 (Tex. App. 1st Dist. 2020) "The long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that 'does business' in Texas." *Id*. (citing Tex. Civ. Prac. & Rem. Code § 17.042). Pursuant to the Texas long-arm statute, a non-resident does business in the state if the non-resident contracts with a Texas

resident and either party is to perform the contract in whole or in part in this state, or recruits Texas residents for employment inside or outside this states. Tex. Civ. Prac. & Rem. Code § 17.042.

Furthermore, to establish personal jurisdiction over a nonresident defendant, Constitutional Due Process standards require that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W. 3d 550, 558-59 (Tex. 2018) (citing *Int'l Shoe Co.*, 326 U.S. at 316)). Due Process requires purposeful availment because personal jurisdiction 'is premised on notions of implied consent – that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there.'." *TV Azteca v. Ruiz*, 490 S.W. 3d 29, 37 (Tex. 2016) (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005)). A defendant's contact with the forum may give rise to general jurisdiction only when the contacts with the state are so "continuous and systematic" as to render it essentially "at home in the forum state." *M & F Worldwide v. Pepsi-Cola Metro*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011).

The Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) established further that a corporate defendant may be treated as "essentially at home" *only* when the defendant is incorporated or maintains its principal place of business except in truly "exceptional cases." *Daimler* rejects the notion that general jurisdiction could be found "in every State in which a corporation engages in substantial, continuous, and systematic course of business" as "unacceptably grasping." *Id.*; *See also Searcy v. Parex Resources*, Inc., 496 S.W. 3d 58, 74-73 (Tex. 2016) *(Daimler* makes clear that general jurisdiction is only present when a defendant not only has continuous and systematic contacts with the forum state, but also has these kinds of

contacts to such an extent that they render it essentially at home in the state … [t]hat is, continuous and systematic contacts, taken alone, are not enough to confer general jurisdiction …"). "The general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state contacts.' Instead, 'the inquiry calls for an appraisal of a corporation's activities in their entirety' because '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *PetroSaudi Oil Services Ltd. v. Hartley*, No. 01-19-00067, 2020 WL 7702181, *11 (Tex. App. 1st Dist. Dec. 29, 2020) (citing *BNSF Ry v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.20)).

Accordingly, while maintaining an office in Texas may well be a factor in determining whether a nonresident corporate defendant may be subject to general personal jurisdiction in the State pursuant to *Daimler*, and thus "found within the district" for the purposes of Rule B, an office in the State alone is not sufficient. For example, in *PetroSaudi* the defendant did have an office in Houston, but the court still looked to what activities were actually being conducted out of that office to determine whether the defendant was "essentially at home" in the State. The court found that the defendant was subject to general personal jurisdiction because the defendant conducted from its Houston office activates substantial to its purpose such as obtaining supplies and crew for the defendants vessels, contract negotiations with third parties, and making travel arrangements for the companies personal worldwide, and because the defendant's human resources team and "management team" were located in Houston. *Id*. Conversely, in *Garcia Hamilton & Associates L.P., RBC Capital Markets LCC.*, 466 F. Supp. 3d, 692, 699 - 701 (S.D. Tex. 2020) the court found that a defendant bond broker incorporated in Minnesota was not subject to general personal jurisdiction even though the defendant maintained offices in Austin, Dallas, Houston, and San

7

Antonio, noting that the general jurisdiction analysis "calls for an appraisal of the corporation's activities in their entirety." For the same reason, Facebook is not subject to general jurisdiction in Texas under *Daimler*, even though it maintains an office in Austin. *In re DMCA Section 512(H) Subpoena to Facebook, Inc.*, 15-mc-0654, 2015 WL 12805630, *6 – 7, n.2 (S.D. Tex. Nov. 18, 2015).

All that XCoal's Second Opposition establishes is that it has an office address in San Antonio and that one employee, Mr. Beyer purportedly mans that office. Second Opposition at 2. XCoal does not in its opposition, or in the Beyer Declaration, actually state that it is "doing business" in Texas in sense contemplated by the Texas long-arm statute, or provide any details as to what – if any – activities XCoal conducts from the San Antonio office. While little is learned about XCoal's activities in Texas from its Second Opposition, Classic's investigation into XCoal's contacts and activities in the State *is* revealing. That investigation establishes that XCoal's activities in San Antonio are minimal, at best, and insignificant when compared to its activities in their entirety and in other forums. *See* Supplemental Declaration of James Power dated February 12, 2012 filed in support of this reply (the "Supp. Power Decl."), ¶¶ 4 - 9.

It is not disputed that XCoal is organized under the laws of Pennsylvania with its principle place of business in that State. Verfied Complaint, ¶ 4. On its web-site, XCoal claims to have some 20 offices, including 8 office in the United States and the rest overseas. Supp. Power Decl., ¶ 11, Ex. 5. However, XCoal's website does not at all describe what activities are conducted out of which offices, except to note that its headquarters are in Pennsylvania.

While XCoal's website claims to have an office in San Antonio, it is also undisputed that XCoal is not registered to do business as a foreign corporation in Texas. Power. Dec. ¶ 4; Suppl.

Power Decl., ¶ 4, Ex. 1. This strongly indicates that XCoal is not actually transacting business in Texas. Pursuant to Tex. Bus. Orgs. Code § 9.001(a)(1), "[t]o transact business in this state, a foreign entity must register under this chapter." While the statute does not specifically define "transacting business," Tex. Bus. Orgs. Code § 9.251 enumerates the specific activities that a foreign entity may conduct in the Texas that *do not* constitute transacting business in the State. The list includes such limited activities as defending an action or suit; maintaining a bank account; effecting a sale through an independent contractor; transacting business in interstate commerce; or conducting an isolated transaction that is completed within a period of 30 days. Accordingly, a foreign entity who's activities are limited to those enumerated in § 9.251 is not required to register pursuant to § 9.001(a)(1).

Given that XCoal has not registered in to do business in Texas as a foreign entity under § 9.001, it may be concluded that XCoal's activities in Texas are limited to those enumerated in § 9.251 and that XCoal is not actually "transacting business in the state" (unless XCoal is transacting business in Texas secretly and without registering as required under § 9.001). Activities such as maintaining bank accounts, effecting a sale through an independent contractor, and conducting an isolated transactions, do not constitute the kind of "exceptional case" envisioned in *Daimler* and do not subject XCoal to general personal jurisdiction in Texas or this District. Furthermore, since XCoal has chosen not to register as a foreign entity under § 9.001, it cannot be said that XCoal has implicitly consented to jurisdiction or has availed itself to laws of Texas and personal jurisdiction in the State.

XCoal's lack of activity and substantial contact with the State is further confirmed by the TLOxp Trans Union and Dun & Bradstreet reports that Classic's counsel obtained prior to

9

commencing this action. *See* Supp. Power Decl., ¶ 5, Exs. 2 & 3. The Trans Union report, for example, identifies 11 principals and corporate officers of XCoal, all of whom are located in Pennsylvania (and none in Texas). Supp. Power Decl., ¶ 7, Ex., at 3 – 4. The report further identifies 9 corporate affiliates under the XCoal name. *Id*. These affiliates are registered in Pennsylvania, West Virginia, Virginia, Alabama, Maryland, and Ohio, but there are no registered affiliates or offices in Texas. *Id*. at 4 -10. Furthermore, the report identifies 66 U.C.C. filings, all filed in Pennsylvania (furthermore, none of the secured parties identified are located in Texas). *Id*. at 14 – 39. The report also identifies 12 "Other Known Employees," including Mr. Beyer. The TLO report, however, identifies Mr. Beyer as the "Latin America Marketing Manager" (not a Senior Vice President),[4] and does not identify him as located in or working out of San Antonio. *Id*. at 39 – 41. Other employees on the list, however, are identified as working in XCoal's headquarters in Pennsylvania. The Dun and Bradstreet report obtained by Classic's counsel is consistent with the Trans Union report, and identifies only 4 XCoal offices in three states (Pa, Fl. and Va.) with independent addresses, phone numbers, and DUNS numbers.[5] Supp. Power Decl., ¶ 8, Ex. 3. No office is found in Texas.

The above demonstrates that, to the extent XCoal actually conducts any activities out of the San Antonio office at all, such activities: (1) do not constitute "doing" or "transacting" business

---

[4] This is also consistent with Mr. Beyer's Linked-in page. Supp. Power Decl., ¶ 12, Ex. 6. On his Linked-in page Mr. Beyer identifies his position as "Latin America Marketing Manager," and not as a Senior Vice President." Furthermore, the lists of officers and principals in the Trans Union report does not include Mr. Beyer. This calls into serious question whether Mr. Beyer is actually a corporate officer of XCoal as implied in XCoal's Second Opposition.

[5] Furthermore, a search of the Texas phone listing do not return any listing for XCoal's purported San Antonio office. Supp. Power. Decl., ¶ 9, Ex. 4.

in the State for the purposes of the Texas long-arm statute or the Tex. Bus. Orgs. Code; and (2) such activities are relatively minimal in relation to XCoal's activities in the entirety and in relation to XCoal's activities in other forums. XCoal is not "at home" in Texas, and thus is not found within the district "in terms of jurisdiction." *LaBanca*, 644 F.2d at 67. Classic would not be able to bring an action against XCoal *in presonam* in this District. Accordingly, XCoal is not found within the district for the purposes of Rule B.

### III. There Are No Equitable factors That Weigh Against Issuing An Order Of Attachment In This Case.

Unable to cite to any controlling precedent from the Supreme Court or the Fifth Circuit, XCoal relies on Second Circuit precedent to argue that equitable factors weigh in favor of denying Classic's Rule B Application. In *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd.*, 461 F.3d 434, 445 (2d Cir. 2006), the Second Circuit noted in *dicta* that equitable vactur of an attachment that has already issued may be appropriate in circumstances where "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id*. Apparently relying on the second *Aqui Stoli* equitable factor, XCoal argues that both it and Classic are to subject *in personam* jurisdiction in New York. XCoal is wrong on both accounts.

First, XCoal relies on *STX Panocean* to argue that it is subject to *in personam* jurisdiction in New York merely because it is registered to do business in New York. The Second Circuit did find in *STX Panocean* that a nonresident corporate defendant was "found within" the Southern District of New York for the purpose of Rule B because the defendant had registered to do business as a foreign entity in New York. *Id*. at 133. In reaching that finding, however, the *STX Panocean*

11

court relied on New York law. *Id*. at 128. At that time, it was "well-settled under New York law that registration under [New York Business Corporation Law] subjects foreign companies to personal jurisdiction in New York." *Id*. 131.

*STX Panocean*, however, was decided in 2009 before *Daimler*. Since *Daimler*, that is no longer the law in New York. It is now well-settled in New York that mere registration under New York Business Corporation Law no longer subjects registered non-resident corporations to general personal jurisdiction in New York. *See e.g., Chufern Chen v. Dunkin' Brands. Inc.*, 954 F.3d 492, 499 (2d Cir. 2020); *see also Aybar v. Aybar*, 93 N.Y.S.3d 159, 165 (NY App. 2d Dep't 2019) ("A corporate defendant's registration to do business in New York … does not constitute consent by the corporation to submit to the general jurisdiction of New York for causes of action that are unrelated to the corporation's affiliations with New York) (citing *Daimler*); *Best v. Gurhie Med. Grp., P.C.,* 107 N.Y.S.3d 258, 261-62 (NY App. 4th Crp't 2019) (same); *Fekah v. Baker Hughes Inc.*, 110 N.Y.S. 3d 1, 2 (NY App. 1st Dep't 2019) (same). XCoal does not claim to do business or conduct activities in New York, or claim to have any other contacts in the State other than its mere registration. Accordingly, XCoal has not established that it is subject *in personam* jurisdiction in New York.[6]

However, even if XCoal were subject to *in personam* jurisdiction in New York, the equitable factor that weighs against a maritime attachment contemplated in *Aqua Stoli* envisions a

---

[6] Furthermore, this exact issue was presented to the court in the NY Rule B action (*Classic Maritime Inc. v. XCoal Energy and Resources LLC*, 1:21-cv-00766 (S.D.N.Y.)(ALC)), and the Court determined that XCoal was not "found" within the district and issued an order for maritime attachment against XCoal. XCoal has since raised the issue again in its motion to vacate the attachment advancing the same argument pursuant to *STX Panocean*, but the court has yet to rule on XCoal's motion.

circumstance were the "plaintiff could obtain *in personam* jurisdiction over the defendant *in the district where the plaintiff is located*." 460 F.3d at 445 (emphasis added). XCoal baldly states, without any basis or supporting argument, that Classic is subject to jurisdiction in New York.

Classic is an entity organized under the laws of the Republic of the Marshall Islands. Verified Complaint, ¶ 3. It is not registered to do business in the New York, it has not offices or employees in New York, and it does not do any business or conduct any regular activities in the State. XCoal offers no reasons as to why Classic would be subject to jurisdiction in New York. It is not.

Accordingly, there are no equitable grounds the weigh against ordering a maritime attachment in this case.

## CONCLUSIONS

Accordingly, and for all of the reasons set forth below and in Classic's Rule B Application, the Court should issue the requested order of attachment directing the issuance of a writ of attachment and garnishment against the Defendants.

Dated: February 12, 2021
      Houston, Texas

Respectfully submitted,

By:    *s/ James H. Power*
      Julia M. Haines
      State Bar. No. 08710800
      Fed I.D. No. 00765
      James H. Power
      State Bar No. 24026397
      Federal I.D. No. 433050
      HOLLAND & KNIGHT LLP

1100 Louisiana Street Suite 4300
Houston, Tx 77002
Telephone (Cell): (713) 805-0684
Office: (713) 244-6875

- and –

31 West 52nd Street
New York, NY 10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010
Email: james.power@hklaw.com

*Counsel for Classic Maritime Inc.*